WOODWARD (HUNT v.). See Case No. 6,901.

---

## Case No. 18,006.

### WOODWARD v. ILLINOIS CENT. R. CO.

[1 Biss. 403.][1]

Circuit Court, N. D. Illinois. July Term, 1863.

BILL OF LADING—THROUGH CONTRACT—LIABILITY OF CARRIER—EXCEPTIONS IN BILL OF LADING—MEASURE OF DAMAGES — PORTION SAVED FROM FIRE.

1. A steamboat bill of lading for the delivery of goods at a certain point, specifying the rate of freight to a more distant point, is a through contract, and binds the carrier to deliver at the latter point.

2. Although common carriers generally contract for safe transit only over their own lines, there is no valid reason why they cannot contract for the safe conveyance of freight over the different lines of communication to its place of destination.

3. The exception from fire liability inserted in a bill of lading, does not excuse the carrier in all

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

cases of destruction by fire; he is, notwithstanding, bound to use reasonable care and vigilance, such as an ordinarily prudent man would exercise over his own property.

[Cited in brief in Gray v. Missouri River Packet Co., 64 Mo. 48.]

4. Fire having caught, the carrier is bound to do all that reasonable and prudent men could, to prevent the entire destruction of the property; otherwise he is responsible for so much as could have been reasonably saved.

5. Measure of damages is the net value of the property at its point of destination, deducting freight. Interest may also be added.

6. A portion of the goods having been saved from a car, loaded in part with plaintiff's property, and in part with property of other parties, the carrier, in the absence of proof that the portion saved had been delivered to the owners, is liable for that portion in any event.

In the fall of 1862, the plaintiffs, who were merchants in Baltimore through their agent, Mr. Meyer, purchased and forwarded to that and other eastern cities from Memphis, Tennessee, considerable quantities of cotton, the transit being over the road of the defendant. At that time Dan. Able & Co. were the agents of the defendant in Memphis, for the purpose of making contracts for the shipment of merchandise, and Graham, Able & Co. were the transfer agents of the defendant at Cairo, in the shipment of property from the railway to the river, and from the river to the railway. On the 24th of October, 1862, Mr. Meyer, as agent of the plaintiffs, shipped on the steamboat John H. Dickey, fifty bales of cotton, and took a bill of lading from Dan. Able & Co., as the agents of the defendant, in the following form—the words printed in italics being written—the remainder the ordinary printed form:

"Shipped by Dan. Able, (*for account E. Meyer*) forwarding and commission merchant, Bradley Block, foot of Jefferson street, in good order and condition, on board the good steamboat called the *John H. Dickey*, whereof ——— is master for the present voyage. the following articles being marked and numbered as below; and are to be delivered without delay in the like good order and condition at the port of *Cairo*, (fire and unavoidable dangers of the river only excepted), unto *Graham, Able & Co.*, or to *their* assigns, he or they paying freight at the rate of *two and 97-100 dollars per 100 lbs. through to Baltimore*, and charges. In witness whereof the owner, master, or clerk of said boat hath affirmed to five bills of lading all of this tenor and date, one of which being accomplished, the others to stand void.

"Dated at Memphis the 24 *day of Oct.*, 1862.

| Marks. | Articles. | Weight. |
|---|---|---|
| *L. D. from* 1 *to* 50 | (50) *Fifty bales cotton.* | |

"*Not accountable for condition, hoops off or bagging torn, and owner assumes all risk of fire and unavoidable accidents en route to destination.*

"*W. G. Cirode,*
"*For Dan'l Able & Co.,*
"*Agents Ills. Central R. R.*
"*For Woodward, Baldwin & Co.,*
"*Baltimore, Md.*"

A few days thereafter, the cotton, having arrived at Cairo, was placed on what are called platform cars on the railway, and on the 30th of October, while the train which carried the cotton was proceeding from Prairie Green to Ashkum, a station about seventy miles from Chicago, the cotton took fire, from a fire on or near the railway, and was almost entirely consumed. The plaintiffs thereupon brought an action upon the case against the company as common carriers. The bill of lading was introduced by the defense, the company claiming that under the exception as to fire they could not be held liable.

Gookins, Thomas & Roberts, for plaintiffs.

McAllister, Jewett & Jackson, for defendant.

DAVIS, Circuit Justice (charging jury). There is no question that the agents of the Illinois Central Railroad, at Memphis, did contract with the agents of the plaintiffs for the safe delivery of this cotton, either at Cairo or Baltimore. It is contended by the plaintiffs' counsel that the bill of lading, given in evidence, was only the contract of the parties as far as Cairo; and that from Cairo the general responsibility of common carriers must attach. The court is of a different opinion, and holds that the bill of lading in this case, which is the contract between the parties, and by which their rights are to be determined, binds the defendant to deliver the cotton safely at Baltimore, unless it should be destroyed by fire. Common carriers, whether steamboats or railroads, generally contract for the safe transit of freight only as far as their railroad or steamboat route extends. But there is no valid reason why the Illinois Central Railroad Company, if it chooses to employ agents at Memphis to feed the road, cannot make a contract there for the safe conveyance of freight, over the different lines of communication, to its place of destination.

Evidence has been given tending to show the existence of a custom, at Cairo, for the railroad company to give the steamboat a receipt for goods delivered, and in the absence of such receipt in this case, it is argued that the cotton could not have been received on this bill of lading.

This is a question of fact for you to determine. If it was the intention to send the cotton by way of the Illinois Central Railway, and the jury find that the cotton was actually received on the road, and transported over it in pursuance of the bill of lading in evidence, then the bill of lading is the contract between the parties, and it is immaterial whether the usual receipt was given at Cairo or not. A

bill of lading usually particularizes the articles carried as freight, but it frequently specifies the terms on which the freight is carried, and by those terms the parties are bound. Common carriers, in the absence of express contracts, are insurers of the freight carried by them, and are only exempt from liability, when the injury is the result of the "act of God," or open public enemies. But common carriers have a right to restrict their liability, especially when so inflammable an article as cotton is offered to them for transportation. And in this case, if the jury believe that the cotton was shipped over the Illinois Central Railroad on this bill of lading, then the clause exempting the road from liability for loss or damage by fire, is operative, and binds both shipper and carrier.

It is proved, that on the 30th day of October last, this cotton was burned near Ashkum station, on the Illinois Central Railroad, while on the cars of the road on its way from Cairo to Chicago. The exemption from fire liability, inserted in a bill of lading, does not excuse the carrier in all cases of destruction by fire. A carrier, notwithstanding that objection, is bound to use reasonable care and vigilance in the transportation of freight, such care and vigilance as an ordinarily prudent man would exercise over his own property; and if, for the want of them, loss occurs, the liability attaches. If loss results from a fire that could not have been prevented by any reasonable degree of vigilance, and could not have been foreseen by care and prudence, the carrier is discharged.

It is for you, gentlemen, applying the rule of liability to the facts, to determine whether blame attached to the servants of the defendant. You must first decide upon the origin of the fire. If the fire originated on the east of the road, was smouldering there when the train of cars passed by, and was blown into a flame by the wind caused by the motion of the cars, and could not have been foreseen or guarded against by reasonable care and watchfulness on the part of the employés of the road, then you should find for the defendant. But if, on the contrary, the cotton was destroyed by a fire which was burning the prairie on the west, running directly to the road, in full view of every one, then it is for the jury to say whether it was not an act of gross negligence to run a train into the fire, or across it. And whether a conductor, who had a proper consideration for the value of the property entrusted to him, should not have stopped his train until all danger from fire had passed.

The evidence is conflicting. It is for you to reconcile it. There is no artificial rule of evidence to control your belief. You should, in weighing testimony, regard the appearance of the witness on the stand, his manner of testimony, the readiness with which he answers cross interrogatories, as well as direct ones; the consistency of his statements with any of the admitted facts of the case, and the intelligence with which he testifies. If you should come to the conclusion that the fire was communicated to the cotton, without any fault of the servants of the defendant, then you will consider whether, after the fire ignited the cotton, they did all that reasonable men could have done to prevent its entire destruction. After the cotton caught fire they were bound to exert themselves, as fair and prudent men should, to save as much of the cotton as possible. If they did not put forth the necessary efforts to save the burning cotton, then the defendant is responsible for so much of the cotton as could have reasonably been saved. If the jury should find that the fire was communicated to the cotton by means of such negligence as would be inexcusable in a prudent man when managing his own property, then they will find for the plaintiffs the net value of the cotton at Baltimore, which was its market value there at the time of its loss, deducting freight. The jury will also add interest.

There is evidence that there were two bales of cotton saved from a car loaded in part with cotton for a firm in New York, and which were not delivered either to the plaintiffs or the New York firm. The plaintiffs having entrusted cotton on that particular car, to the defendant, the burden of proof is on the defendant to show that the two bales saved from the fire did not belong to the plaintiffs. Having offered no evidence on that point, the jury will, in any event, find for the plaintiffs, the value of those two bales.

The jury failed to agree.
For report of next trial and citation of authorities, see [Case No. 18,007].